STATE, WILLIAM S. ANDERSON, PROSECUTOR, v. MAYOR AND CITY COUNCIL OF THE CITY OF PASSAIC.

The commissioners appointed by this court to make an assessment for grading and regulating River road, in the city of Passaic, cannot, by virtue of the charter of said city, (*Pamph. L.* 1881, *p.*    , §§ 19, 20,) impose an assessment upon any land-owner whose land is not included in the existing preliminary report and assessment.

This writ brings up an assessment for regulating and grading River road, in the city of Passaic, made by Adrian Hopper, Alfred Speer and John Hermion, commissioners appointed by this court, upon lands of Benjamin Aycrigg, Benjamin B. Aycrigg and John H. Pell, trustees of Thomas Gardner, and lands of B. B. Aycrigg and Alleta M. Hegeman.

By agreement, a return to a writ of which Susan J. Palmer was prosecutor, bringing up an assessment by the same commissioners, at the same time, upon her land, was to be taken as the return to this writ.

The charter of the city of Passaic (*Pamph. L.* 1871, *p.* 619, §§ 19, 20,) enacts the method of procedure in making improvements of this kind within the said city.

A land-owner could apply to the common council for the improvement. The application was to be advertised for ten days before the passage of the ordinance authorizing the improvement; then three commissioners were to be appointed, to determine what lands would be benefited by the improvement, and to estimate the cost of the improvement, and to make a map of said property benefited, and report the names of the owners of the several lots, with the amount assesssed to each, and also to report the value of lands taken, &c.

They were to file their report with the clerk of the village, and the clerk was to give notice of the filing of such report and map within ten days after the same should be filed with

him, in five public places, and by delivering or mailing such notice to the owners mentioned in the report.

Unless within thirty days thereafter, the owners of two-thirds in value of the lands proposed to be assessed, should file with the clerk a remonstrance, the council should proceed to execute such improvement.

Section 19 further provides that the expenses of said improvement, when completed, should be assessed upon the property reported by said commissioners as benefited thereby, and in the proportion reported by them.

It appears that the grading and sidewalk building for which the present assessment was made, was by virtue of an ordinance passed March 17th, 1873.

The assessment made for the expenses of the work was set aside, after the decision in *State, Ryerson, pros., v. Passaic,* 9 *Vroom* 171. This court then, by virtue of the tenth section of the *Certiorari* act, appointed three commissioners, and their assessment was set aside in the case of *State, Ryerson, pros., v. Passaic,* 11 *Vroom* 118, upon the ground that the commissioners estimated the value of land which had been taken, to do which they had no power.

The present commissioners were appointed by a rule of this court entered April 3d, 1880, and their report is now attacked.

Argued at June Term, 1882, before Justices DEPUE, VAN SYCKEL and REED.

For the plaintiff in *certiorari,* T. M. Moore.

For the defendants, J. E. Stoutenburgh.

The opinion of the court was delivered by

REED, J. The argument of this cause was confined to the first reason, namely, that the lands of the prosecutors were not included within the list of lots reported in the preliminary assessment as benefited.

This fact is admitted in the case. The counsel for the defendants endeavors to evade the consequences which, upon the admission of this fact, would seem to result from this departure from the city charter. He directs his attacks against the preliminary report.

He contends that there is legally no preliminary report. His argument is that, there being no preliminary report, the commissioners were left free to assess all land which, in their judgment, was benefited.

It is admitted that a report was made September 4th, 1873, in which the land to be benefited by this improvement was specifically stated. It is true that the commissioners adopted a map previously existing, but it does not appear that they adopted any previous schedule of lots upon that map as those supposed to be benefited, and a former list of the amounts of such benefits. I do not think that the objection taken to the preliminary report, upon the ground that it was not the exercise of an independent judgment of the commissioners who made it, but a mere adoption of another's work, is tenable. Nor do I see that any of the other objections urged against it, so far as that report has a bearing upon the validity of the final assessment, are valid.

But, suppose the preliminary report was defective. Can the defendants allow it to stand unreversed, and yet claim that, because of its invalidity, persons who, by reason of not being named in said report, had no notice of the preliminary assessment and no power to file their remonstrances against the improvement, can now be assessed for the work? I think that the defendants are not in a position to attack the preliminary report, for the purpose of supporting the present assessment. The object of the scheme was by an assessment *in limine*, and notice thereof to warn every one who would be affected by the execution of the public improvement. It empowered a two-third ownership of such persons to defeat the project by a remonstrance.

The final assessment is based upon this assessment. The lands to be assessed are the lands which the preliminary

report shows as benefited. The existence of the first seems the foundation of the second assessment. Without the first, I do not perceive in what way the second can be supported.

After the work was done, no land-owner would be permitted to attack the first assessment for the purpose of defeating the second.

Neither can the municipality attack it, for if it should be vacated, all the proceedings built upon it must fall with it. Admitting that the scheme provided by the charter is as I have heretofore displayed it, it follows that the preliminary assessment is an essential part of it. It is to the land-owner assessed the most important part of it.

It warns him of the fact that he is to be assessed, and the amount for which he is to be assessed. It gives him a position where he can exert his vote and his influence in securing the defeat of the proposed improvement, should it be unsatisfactory.

So entirely is it a part of the scheme that, should it, as contended by the counsel, be fundamentally defective, as opposed to constitutional principles, it must result in defeating the entire procedure.

From my examination of the sections, I have found the scheme to be as already stated. It is, in my judgment, impossible to separate the two sections, 19 and 20, and support the present assessment by a construction of the latter section alone.

Although the commissioners were appointed by this court, they were obliged to make the assessment, in accordance with the method pointed out by the statute by virtue of which the improvement was made.

The assessment should be set aside, with costs.